# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MICHAEL R. COOPER,**

      **Plaintiff,**

v.                          Case No. 17-CV-1461

**LIEUTENANT HAW AND
LIEUTENANT MONTANO,**

      **Defendants.**

## DECISION AND ORDER

Plaintiff Michael R. Cooper is a Wisconsin state prisoner representing himself. He filed this case alleging the defendants violated his Fourteenth Amendment due process rights during disciplinary proceedings at the Milwaukee County Jail. The court found Cooper's first complaint deficient and gave him an opportunity to amend. Cooper did so, and the court allowed him to proceed on a procedural due process claim against defendants Lieutenant Haw and Lieutenant Montano. Both the plaintiff and the defendants have moved for summary judgment. The court will deny the plaintiff's motion for summary judgment, grant the defendants' motion for summary judgment, and dismiss this case.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal law. Venue is proper under 28 U.S.C. § 1391. The

parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

1. *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

*2. Relevant Facts*

The relevant facts are taken from both the plaintiff's and the defendants' Proposed Findings of Fact. (ECF Nos. 26, 27, 37, 38, and 41.) They include the undisputed facts as well as facts that were not properly disputed. The court also construes Cooper's complaint as an affidavit to the extent the allegations comply with the requirements for affidavits—that is, they are based on personal knowledge, they are admissible in evidence, and the plaintiff is competent to testify to the statements made. *Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996) (citing then Fed. R. Civ. P. 56(e), now Fed. R. Civ. P. 56(c)(4)).

In April 2017 Cooper was a pretrial detainee housed at the Milwaukee County Jail. (ECF No. 26, ¶ 1; ECF No. 27 ¶ 1.) At all times relevant, both Haw and Montano were employed by the Milwaukee County Sheriff's Office (the MCSO) as Corrections Officer Lieutenants at the Milwaukee County Jail. (ECF No. 26, ¶¶ 12, 13.)

On April 25, 2017, Cooper was housed in pod 5B, cell 38. (ECF No. 26, ¶ 17.) Another inmate, Alexander, was housed in pod 5B, cell 24. (*Id.,* ¶ 18.) Pod 5B is a general housing unit, and only one officer per shift is assigned to pod 5B. (*Id.*, ¶¶ 21, 22.) That day, Robert Ehlers, who is not a party in this case, worked for the MCSO as a Corrections Officer and was assigned to pod 5B on first shift, working 6:00 a.m. to 2:30 p.m. (*Id.,* ¶¶ 15, 16.) Ehlers explained the dayroom rules to all the inmates in pod 5B prior to breakfast service, which occurred at approximately 6:50 a.m., and included in his explanation that inmates are to refrain from fighting. (*Id.,* ¶¶ 23, 24.)

After breakfast, at approximately 7:15 a.m., Ehlers noticed Cooper walking quickly in the dayroom toward a cell that was not his. (ECF No. 26, ¶ 25.) Ehlers saw Cooper strike Alexander and heard a corresponding loud "thwack." (*Id.*, ¶¶ 27, 28.) He shouted "hey" at Cooper and Alexander and ordered them both to lock into their cells, which they did without issue. (*Id.*, ¶¶ 29, 30.) Consistent with policy involving a major incident, Ehlers also ordered the entire pod to lock into their cells so that the circumstances of the incident could be addressed. (*Id.*, ¶ 31.) It is Jail procedure to remove all inmates involved in fights from general housing pods to maintain the safety and security of the pod, the inmates in that pod, the officer assigned to the pod, and the Jail as a whole. (*Id.*, ¶ 32.) Inmates who perpetrate an assault against another inmate are housed in disciplinary housing units pending a disciplinary hearing. (*Id.*, ¶ 33.)

Montano was assigned to work first shift in the Jail that day. (ECF No. 26, ¶ 14.) Ehlers called Montano to respond, and Montano called for additional corrections staff. (*Id.*, ¶¶ 34, 35.) Montano arrived at pod 5B around 7:18 a.m. and Ehlers debriefed her. (*Id.*, ¶ 36.) Ehlers told Montano that he saw and heard Cooper strike Alexander in the face. (*Id.*, ¶ 37.) When Montano talked to Cooper, he denied hitting Alexander and suggested that Montano review the tape. (*Id.*, ¶ 38.) After speaking with Ehlers, Cooper, and Alexander, Montano determined that there was enough evidence to place Cooper on pending discipline status. (*Id.*, ¶ 46.)

Around 7:20 a.m., three correctional officers arrived to pod 5B with a restraint belt and assisted Montano in escorting Cooper to disciplinary housing. (ECF No. 26,

4

¶ 47.) Montano informed Cooper that he was being taken to disciplinary housing, on pending discipline status, for assaulting another inmate. (*Id.,* ¶ 50; *see also* Ex. 1008 to Dec. of Katherine West, ECF No. 42-1 at 16-17.) Montano told Cooper he would have a disciplinary hearing—according to Cooper, within 72 hours, or, according to the defendants, within three days. (ECF No. 41, ¶ 51.)

It is Montano's practice to require all corrections staff to complete their rules violation reports and incident reports before the end of the corresponding shift and to bring her any rules violation reports so she can sign off on them. (ECF No. 41, ¶ 58.) Once she signs off on a rules violation report, her practice is to give it back to the officer who wrote it so that he or she can distribute it. (*Id.,* ¶ 61.) Rules violation reports are a three-part carbon-copy form: one copy goes to the inmate, one copy remains in the disciplinary housing unit, and the original goes to the Classification Department for maintenance in the inmate's classification file and tracking to ensure a timely disciplinary hearing is conducted. (*Id.,* ¶ 59.)

As part of his assignment on April 28, 2017, Haw conducted Cooper's disciplinary hearing at approximately 8:08 p.m. (ECF No. 26, ¶ 65.) Haw does not recall the specific facts of Cooper's hearing. (*Id.,* ¶ 67.) According to Haw, it is not a disciplinary hearing lieutenant's responsibility to provide inmates with 24-hour prior written notice before conducting the hearing; he points out that there is no guarantee that the hearing lieutenant would even be at work the day before the hearing. (ECF No. 41, ¶ 66.)

In April 2017 it was Haw's practice to ask the inmate if he had received a copy of the rules violation report and, if not, provide him with one before the hearing. (ECF No. 26, ¶ 70.) It was also his practice to review the rules violation report and corresponding incident report before conducting the hearing and, if scheduling allowed, to speak with the officers involved. (ECF No. 26, ¶ 69.) Haw's practice during a hearing was to read the rules the inmate was alleged to have violated; read the rules violation report; ask the inmate to tell his side of the story; and ask the inmate if he has any witnesses with relevant information. (*Id.,* ¶ 71.) Haw does not recall if Cooper asked to call any witnesses (ECF No. 41, ¶ 74), but it was his practice to talk to any witness an inmate identified—if doing so would not pose a security risk and if the testimony was relevant and not repetitive (*id.,* ¶ 72). It was also his practice to inform the inmate of the specific rule violations he was sustaining and/or denying, identify the total amount of disciplinary confinement he was imposing, if any, and to inform the inmate of his right to appeal the decision. (*Id.,* ¶ 76.) Once the hearing was over, it was Haw's practice to note the time on his findings sheet. (*Id.,* ¶ 77.) Once he had concluded all of his hearing for that shift, he would bring the rules violations report and corresponding hearings findings sheet to the Classification Department so that classification officers could make copies of the findings and get the copies to the inmates. (*Id.*)

According to Cooper, Haw came over his intercom and stated he would be conducting the disciplinary hearing. (ECF No. 8 at 4.) Cooper had not been provided with any paperwork regarding the hearing or violation. (*Id.* at 5.) Haw told Cooper

6

he believed "his officer" and did not respond when Cooper asked with what he had been charged. (*Id.* at 4.) Cooper alleges that he also told Haw that he had witnesses "because the day-room was filled with inmates," but Haw did not respond. (*Id.*) Cooper asked several times how to appeal but received no response and never received a copy of the hearing officer's decision. (*Id.* at 5.)

The parties agree that it is an inmate's responsibility to identify specific witnesses during disciplinary hearings. (ECF No. 26, ¶ 82.) At his deposition Cooper testified that he "had about four names as witnesses," although he could only identify one person. (*Id.,* ¶ 91.) When asked what witnesses he would have told Haw to interview in support of his position, he testified that he would have told Haw to "interview the whole pod." (*Id.,* ¶ 92.) Cooper also testified at his deposition that Montano's only involvement in this action was her failure to provide him notice or reasons as to why he was being placed in segregation. (*Id.,* ¶ 89.) He said the same thing in the course of written discovery. (*Id.,* ¶ 93.)

Haw found Cooper guilty. (ECF No. 26, ¶ 5.) Cooper alleges he never received a violation report or a copy of Haw's decision and that he did not have the opportunity to call witnesses. (*Id.*) On April 29, 2017, Cooper learned from a non-defendant officer that he had received 12 days discipline. (*Id.*, ¶ 9.) Cooper filed a grievance the same day, saying the defendants violated his rights. (ECF No. 27, ¶ 6.)

Cooper subsequently brought this lawsuit, alleging that Montano and Hall violated his rights under the Due Process Clause of the Fourteenth Amendment by failing to provide adequate procedural safeguards in connection with his disciplinary

7

hearing. Cooper says his due process rights were violated because the defendants never provided him with: (1) a notice of placement in segregation and the reasons why; (2) a violation report with the charges; (3) a notice to call witnesses; (4) a copy of the hearing officer's decision; (5) a notice to appeal and/or incident report numbers; and (6) a disciplinary hearing held within 72 hours. (ECF No. 23 at 2–4.) Haw and Montano contend that they are entitled to summary judgment because Cooper has failed to show that they were responsible for the alleged violations of his constitutional rights. (ECF No. 40 at 1.)

   *3. Analysis*

Because it violates the due process clause of the Fourteenth Amendment to place a pretrial detainee in segregation (for disciplinary reasons) "without notice and without an opportunity to be heard," *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002), the court allowed Cooper to proceed with a claim against Haw and Montano. While a pretrial detainee cannot be punished for the crimes of which he has been accused, *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979), he may be "punished for misconduct that occurs while he is awaiting trial in a pretrial confinement status" so long as he has been afforded "some sort of procedural protection." *Rapier v. Harris*, 172 F.3d 999, 1003, 1005 (7th Cir. 1999).

Only those public employees who are personally responsible for a constitutional violation are liable under section 1983. *Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009). For liability to attach, the individual defendant must have caused or participated in a constitutional violation. *Hildebrandt v. Illinois Dept.*

8

*of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003). Montano's only involvement in the incident with Cooper was responding to the call from Ehlers and placing Cooper in segregation. Cooper argues it was Montano's responsibility to provide him with a copy of the rule violation report and provide notice of and the reasons why he was being placed in segregation. (ECF No. 35 at 2.)

The defendants state that the officer who authored the report (Ehlers) was responsible for making sure Cooper received a copy. (ECF No. 26 ¶ 62.) Cooper has failed to provide any evidence that creates an issue of fact as to whether that is true. Nor has Cooper presented any evidence to support his allegation that Montano was personally required to provide him notice about why he was being placed in segregation. In any event, it was no mystery why Cooper was being placed in segregation. He had just engaged in an altercation with Alexander, an altercation that Ehlers had to break up. No time had passed between Ehlers breaking up the fight and Montano escorting Cooper out of the pod. Indeed, in his complaint Cooper acknowledges that he was "placed in discipline pending investigation of an altercation with another inmate." (ECF No. 8 at 3.) And at his deposition Cooper testified that Montano said she was putting him in disciplinary status pending investigation of the altercation. (ECF No. 42-1 at 16–17.) Because Cooper has produced no evidence that Montano violated his constitutional rights, Montano is entitled to summary judgment.

As for Haw, Cooper argues that Haw was responsible for providing him with notice of the disciplinary hearing 24 hours before it occurred, for providing him with

9

a copy of the decision after the disciplinary hearing, and for providing him with a notice of his right to appeal. (ECF No. 35 at 5.) However, Cooper has provided no evidence that Haw was supposed to do these things. The defendants point out that the lieutenant holding the hearing would *not* be responsible for providing advance notice because he or she might not even be on duty the day before a disciplinary hearing. (ECF No. 41, ¶ 66.) They also explain that the Classification Department distributes the hearing findings, not the disciplinary hearing lieutenant, and Cooper has no evidence to dispute that evidence. (*Id.,* ¶ 77.) As for what he needed to do to appeal the disciplinary decision, Cooper acknowledges that the disciplinary hearing and appeal process is laid out in the Jail's Inmate Handbook. (ECF No. 27, ¶ 8; ECF No. 23-1 at 28.)

As for Cooper's allegation that Haw failed to provide him the opportunity to call witnesses (ECF No. 41, ¶ 90), Haw says it would have been his practice to question witnesses if Cooper identified them and if questioning them would not pose a risk and would be relevant and not repetitive. (ECF No. 26 ¶ 72.) To the extent Haw's response can be interpreted as disputing Cooper's allegation that he asked to call witnesses and was ignored, the dispute is not material. Rather than identifying one or more specific witnesses he would have called to testify on his behalf, Cooper says he would have asked Haw to interview the whole pod. (ECF No. 33-2 at 5, 6.) But asking Haw to essentially extend the investigation of the incident to all inmates in the pod is quite different from allowing Cooper to call witnesses.

More importantly, Cooper has not stated what testimony any witness would have given, or explained how witness testimony would have changed the outcome of his hearing. The Court of Appeals for the Seventh Circuit has recognized that the harmless error doctrine applies to prison disciplinary proceedings, *see Piggie v. Cotton*, 344 F.3d 674, 677–78 (7th. Cir. 2005), and has held that an inmate who failed to show that his inability to call witnesses "operated to bar any relevant witnesses from testifying at his hearing" could not show a deprivation of his due process rights, *Jackson v. Everett*, 2007 WL 1224609 (7th Cir. Apr. 24, 2007) (unpublished). In other words, without showing how not being able to call witnesses affected the outcome of his hearing, Cooper cannot show that his due process rights were violated.

Cooper's argument that his rights were violated because Haw conducted the disciplinary hearing more than 72 hours after Montano placed Cooper in segregation also fails. The court accepts Cooper's contention that Montano told him he would have a hearing within 72 hours of the incident. The court also acknowledges that the hearing took place roughly twelve hours after the 72-hour period lapsed. But the Seventh Circuit Court of Appeals has held that, by itself, the failure to comply with a 72-hour rule, even when there is such a rule, does not "amount to a violation of constitutional magnitude." *Caruth v. Pinkey*, 683 F.2d 1044, 1052 (7th Cir. 1982) (finding that a two-month delay does not violate due process). The 12-hour delay in holding the disciplinary hearing did not violate Cooper's due process rights.

Because the undisputed facts support judgment in the defendants' favor, the court denies Cooper's motion for summary judgment and grants the defendants' motion for summary judgment.

*4. Conclusion*

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (ECF No. 25) is **GRANTED**.

**IT IS FURTHER ORDERED** that Cooper's motion for summary judgment (ECF No. 22) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court **DISMISS** this case and enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no

more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 13th day of March, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge